UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:                                                                    Chapter 7

                                                                          Case No. 1-14-42483-cec

JENNIFER A. GUCCIARDO
AKA JENNIFER DILANDRO,

                              Debtor.
-------------------------------------------------------------X
GEORGE PAPPAS AND PROACTIVE DEALER
SERVICES, INC.,

                              Plaintiffs,
                                                                          Adv. Proc. No. 1-15-01049-cec

              -against-

JENNIFER A. GUCCIARDO,

                              Defendant.
-------------------------------------------------------------X


<u>DECISION AFTER TRIAL</u>




APPEARANCES:


Jeffery Herzberg, Esq.                          Christi M. Gelo, Esq.
Zinker & Herzberg, LLP                          The Law Office of Christi M. Gelo, P.C.
300 Rabro Drive, Suite 114                      135-24 Hillside Avenue
Hauppauge, New York 11788                       Richmond Hill, New York 11418
Attorney for Plaintiffs                         Attorney for Defendant



                         CARLA E. CRAIG
                  Chief United States Bankruptcy Judge

This matter comes before the Court following a trial in this adversary proceeding, in which Plaintiffs, George Pappas and Proactive Dealer Services, Inc. (the "Plaintiffs") seek a determination that the debt created by a state court judgment issued in their favor against the debtor, Jennifer A. Gucciardo (the "Debtor"), is non-dischargeable under §§ 523(a)(4) and 523(a)(6).[1]

For the reasons set forth below, the Plaintiffs are not entitled to a judgment of non-dischargeability.

## JURISDICTION

This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Eastern District of New York standing order dated August 28, 1996, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and Federal Rule of Bankruptcy Procedure 7001(6). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by the Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

The following facts are undisputed.

The Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 16, 2014 (the "Chapter 7 case"). (Case No. 14-42483-CEC, ECF No. 1).[2] The Debtor had previously filed a petition for relief under Chapter 13 of the Bankruptcy Code on March 29, 2012, (the "Chapter 13 case"). (Case No. 12-42227-CEC, ECF. No. 1.) The Chapter 13 case was dismissed on November 30, 2012. (Case No. 12-42227-CEC, ECF No. 82.)

---

[1] Except as otherwise indicated, statutory citations are to the Bankruptcy Code, Title 11, U.S.C.
[2] All references to "ECF No." are to documents, identified by docket entry number, filed in Adversary Proceeding No. 15-01049-CEC, unless otherwise indicated.

The Debtor was the sole shareholder, president, and director of Keystone Equity Group d/b/a Keystone Auto Sales ("Keystone").  (Pls.' Proposed Joint Pre-Trial Order (hereinafter "Pls. JPTO") ¶ 5d, ECF No. 22; Def.'s Proposed Joint Pre-Trial Order (hereinafter "Def. JPTO") ¶ 5d, ECF No. 23.)  Keystone operated as a car wholesaler in the State of New York based on a license issued in the State of New Jersey in 2005.  (Pls. JPTO ¶ 5m, ECF No. 22; Def. JPTO ¶ 5n, ECF No. 23.)  The Debtor's husband, Thomas Gucciardo ("Thomas"), operated the business (Pls.' Ex. 1, at 1), while the Debtor was Keystone's bookkeeper.  Id.  Thomas was convicted for violations of the federal securities laws prior to the formation of Keystone (Pls. JPTO ¶ 5g, ECF No. 22; Def. JPTO ¶ 5g, ECF No. 23), and for motor vehicle theft in 2011.  (Pls. JPTO ¶ 5j, ECF No. 22; Def. JPTO ¶ 5k, ECF No. 23.)

George Pappas ("Pappas") is the president of Proactive Dealer Services ("Proactive"), a business which provides loans to car wholesalers like Keystone, for the purchase of vehicles. (Pls. JPTO ¶ 5h, 5n, ECF No. 22; Def. JPTO, ¶¶ 5i, 5o, ECF No. 23.)  In Keystone's arrangement with Proactive, Proactive loaned money to Keystone to buy cars, and upon sale of each car, Keystone was required to repay the amount borrowed from Proactive to purchase the car.  (Pls. JPTO ¶ 5o, ECF No. 22; Def. JPTO ¶ 5p, ECF No. 23.)

For approximately five years, Keystone was "fairly current" in repayment of its obligations to Proactive.  (Pls. JPTO ¶ 5p, ECF No. 22; Def. JPTO ¶ 5q, ECF No. 23.)  Starting in or about November of 2009, however, Keystone's loan repayment checks to Proactive were dishonored with notations of either "stopped payment" or "returned for insufficient funds".  (Pls. JPTO ¶ 5q, ECF No. 22; Def. JPTO ¶ 5r, ECF No. 23.)  During this period, Keystone asked for and received additional loans from Proactive to purchase additional vehicles.  Id. Notwithstanding these advances and the subsequent liquidation of the Keystone vehicle fleet,

Keystone did not thereafter repay Proactive for any vehicles purchased with Proactive funds.  Id.

In November, 2009, Thomas caused $50,000 to be wrongfully withdrawn from Proactive's bank

account and transferred to Keystone's bank account.  (Pls. JPTO ¶ 5i, ECF No. 22; Def. JPTO ¶

5j, ECF No. 23.)

The 2008 and 2009 income tax returns for Keystone reflected "loans to

stockholders/affiliates" and "loans to shareholders", respectively, in the amount of $213,898 for

the year 2008 and in the amount of $274,480 for the year 2009.  (Pls. JPTO ¶ 5e, ECF No. 22;

Def. JPTO ¶ 5e, ECF No. 23.)  The Plaintiffs claim that the Debtor has not repaid these loans.

(Tr. at 30-31.) [3]  The Debtor claims that at no point did she receive these monies, and that she

believed that these documents indicated money was loaned to Keystone, not loaned by Keystone

to her.  (Tr. at 31.)

Proactive commenced an action against TD Bank to recover the $50,000 taken from its

bank account by Thomas in the Supreme Court of the State of New York, County of Queens

("State Court").  (Pls.' Ex. 1, at 2.)  TD Bank settled Proactive's claim for the unauthorized

withdrawal of funds by a confidential agreement.  (Pls. JPTO ¶ 5i, ECF No. 22; Def. JPTO ¶ 5j,

ECF No. 23.)  However, the Plaintiffs allege that this amount has not been repaid by Keystone.

(Pls. JPTO ¶ 5q, ECF No. 22; Def. JPTO ¶ 5r, ECF No. 23.)

The Plaintiffs commenced a separate action against the Debtor, Thomas, and Keystone to

recover the amounts owed by Proactive to Keystone, in the amount of $177,192, in State Court

on April 13, 2011.  (Pls.' Ex. 1, at 2.)  On February 6, 2012, the State Court awarded summary

judgment to the Plaintiffs against the Debtor, finding her liable for the debts owed by Keystone

to the Plaintiffs and directing entry of judgment against her.  Six days later, the State Court

---

[3] "Tr." refers to the transcript of the hearing held on June 1, 2017, (ECF No. 29).

judgment (the "State Court Judgment"), in the amount of $213,169.23, was entered against the Debtor in State Court.  (Pls.' Ex. 1 and 2.)

In its decision awarding summary judgment (the "State Court Decision"), the State Court determined that the corporate veil should be pierced to hold the Debtor liable for Keystone's debts to the Plaintiffs.  The State Court found that:

> [P]laintiffs submitted proof that defendant [Jennifer Gucciardo] was the only owner of Keystone and that she exercised complete dominion and control over the company. Indicia of domination such as (1) inadequate capitalization of the corporation, (2) the use of corporate funds for personal rather than corporate purposes, and (3) transactions with the corporation that did not occur at arms [sic] length…may be inferred from the record. The plaintiffs also submitted proof that defendant [Jennifer Gucciardo], the sole owner of Keystone, was ultimately responsible alone for the wrong of the corporation's failure to pay the debts owed to Proactive…The plaintiffs' proof also permits the inference that defendant [Jennifer Gucciardo] used Keystone to make fraudulent conveyances to herself (see, e.g., Debtor and Creditor Law §274) such as mortgage payments and purported "loans", a circumstance which warrants the piercing of the corporate veil.

(Pls.' Ex. 1, at 4 (citations omitted).)  The State Court also found that the Debtor's claim that her husband, Thomas, "dominated Keystone and committed the wrongs against plaintiffs", was insufficient to raise a triable issue of fact with respect to domination or wrongdoing.  "[A]s the sole owner of Keystone, she ultimately had control of the business and ultimately had responsibility for the manner in which she permitted the corporation to be used."  Id.

On April 22, 2015 Pappas filed a complaint commencing this adversary proceeding. (Compl., ECF No. 1.)  On July 22, 2016, an amended complaint was filed which added Proactive as a plaintiff.  (Pls.' Am. Compl., ECF No. 17.)  The Plaintiffs allege that the Debtor's debt is non-dischargeable pursuant to § 523(a)(4) because the Debtor engaged in fraud or defalcation while acting in a fiduciary capacity (Pls.' Am. Compl. ¶ 35, ECF No. 17); that the State Court's decision to pierce the corporate veil should be given collateral estoppel effect with respect to the

elements of non-dischargeability asserted in this adversary proceeding (Pls.' Post Trial Mem., at 4); and that the Debtor's debt is also non-dischargeable pursuant to § 523(a)(6) because Keystone's delivery of checks that were dishonored, the unauthorized withdrawal of $50,000 from Proactive's bank account, and the Debtor's failure to repay Keystone monies (including loans from Keystone, and money used for personal expenses) "constitute 'willful and malicious injuries'" to the Plaintiffs. (Pls.' Am. Compl. ¶ 37-42, ECF No. 17.) A trial was held on March 2, 2017.

## **DISCUSSION**

A. Collateral Estoppel

The Plaintiffs assert that, under the doctrine of collateral estoppel, the findings of fact and conclusions of law in the State Court Decision should be given preclusive effect on the issue of non-dischargeability in this proceeding. Collateral estoppel prevents "parties or their privies from relitigating in a subsequent action, an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters v. Simon, 310 F.3d 280, 288 (2d Cir. 2002) (citing Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998)). This doctrine applies in bankruptcy proceedings, including those arising under § 523(a). "In establishing a cause of action under [§ 523(a)(4)], a [plaintiff-]creditor may invoke the principles of collateral estoppel or issue preclusion." Indo-Med Commodities, Inc. v. Wisell (In re Wisell), 494 B.R. 23, 34 (Bankr. E.D.N.Y. 2011). See also Kelleran v. Andrijevic, 825 F.2d 692, 695 (2d Cir.1987) ("[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction"); Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991) ("…collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)").

In determining the preclusive effect of a state court judgment, a federal court must apply the issue preclusion rules of the state where the judgment was issued.  New York v. Sokol (In re Sokol), 113 F.3d 303, 306 (2d Cir. 1997).  Under New York law, collateral estoppel may be invoked when (1) the issue is identical to one decided in the prior proceeding; (2) the issue was actually litigated and necessarily decided in the prior proceeding; and (3) the party against whom it is being used had a full and fair opportunity to litigate the issue.  Allied Chem., and Operating Unit of Allied Corp. v. Niagara Mohawk Power Corp., 72 N.Y.2d 271, 276 (1988) (citing Schwartz v. Public Adm'r, 24 N.Y.2d 65, 71 (1969); Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500-502 (1984)).  An issue is actually litigated if it is "…properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding."  D'Arata v. New York Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 667 (1990) (citing Matter of Halyalkar v. Board of Regents, 72 N.Y.2d 261, 268 (1988)). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues and the necessity of their having been decided, [while] the party opposing its use has the responsive burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action."  Sokol, 113 F. 3d at 306.

Because a judgment of non-dischargeability undermines a debtor's fresh start, the court must exercise caution in its determination.  "Exceptions to discharge are to be narrowly construed and all doubts should be resolved in the debtor's favor."  Denton v. Hyman (In re Hyman), 502 F.3d 61, 66 (2d Cir. 2007).  "Whether it is at the conclusion of trial or on summary judgment determination, in order to enter a § 523(a) judgment against a debtor, the court must find that all the necessary elements of § 523(a) have been proven by a preponderance of the evidence."  Wissel, 494 B.R. at 29 (citing Grogan, 498 U.S. at 291).  The court "will not string

together sentences…so as to cobble together a finding under [523(a)]." Id. (citing Sarasota

CCM, Inc. v. Kuncman (In re Kuncman), 454 B.R. 276, 284 (Bankr. E.D.N.Y. 2011).

Therefore,

> [i]n giving collateral estoppel effect to a pre-petition judgment in a
> non-dischargeability action, the bankruptcy court must be able,
> based upon the findings made in the pre-petition judgment, to make
> an independent determination that the elements of § 523(a) have
> been satisfied.  In other words, the bankruptcy court must be able to
> identify clear and specific findings in the pre-petition judgment
> which correlate to, and are decisive as to, the elements to be proven
> in the § 523(a) cause of action.

Wissel, 494 B.R. at 35.

Here, there is no question that the Debtor is liable for the obligations of Keystone; a

judgment has been entered against her by the State Court.  However, the issues presented before

this Court are not identical to the issues litigated and necessarily decided by the State Court.  The

issue addressed in the State Court Decision was whether to pierce the corporate veil to hold the

Debtor liable for Keystone's obligations to the Plaintiffs.  The issues in this case are whether the

debt owed by the Debtor to the Plaintiffs as a result of the State Court Judgment is for (1) "fraud

or defalcation while acting in a fiduciary capacity" or (2) for "willful and malicious injury" to the

Plaintiffs.

The elements required to establish liability under § 523(a)(4) are (1) the existence of a

fiduciary relationship between the debtor and the plaintiff; (2) fraud or defalcation by the debtor

while acting in that fiduciary capacity; which (3) gave rise to the debt which is claimed to be

non-dischargeable.  "[T]he court must find that the defendant was 'acting in a fiduciary capacity'

with respect to the particular conduct giving rise to the liability which is claimed to be non-

dischargeable."  Currie v. Sanchez (In re Sanchez), 2016 Bankr. LEXIS 3481, *13 (Bankr.

S.D.N.Y. Sept. 26, 2016) (quoting Zohlman v. Zoldan, 226 B.R. 767, 772 (S.D.N.Y. 1990)).

The elements required to establish non-dischargeability under § 523(a)(6) are (1) that the debtor acted willfully, i.e., with a deliberate intent to cause injury; (2) that the debtor acted maliciously; and (3) that these actions cause injury to the plaintiff.  <u>Guggenheim Capital, LLC v. Birnbaum (In re Birnbaum)</u>, 513 B.R. 788, 803-04 (Bankr. E.D.N.Y 2014).

The State Court Decision sets forth the elements necessary to pierce the corporate veil: "a showing that the individual defendant(s) (1) exercised complete dominion and control over the corporation, and (2) used such dominion and control to commit a fraud or wrong against the plaintiff which resulted in injury."  (Pls.' Ex. 1, at 3 (citations omitted).)  In determining that this standard was met, the State Court found "indicia" of the Debtor's domination of Keystone, such as "inadequate capitalization of the corporation", "the use of corporate funds for personal rather than corporate purposes" and "transactions…that did not occur at arms [sic] length".  <u>Id.</u> at 4.  As for the second prong, the State Court found that the Debtor was responsible for "the wrong of the corporation's failure to pay the debts owed to Proactive".  <u>Id.</u>

It is clear that the findings in the State Court Decision are not sufficient to support a finding of "fraud or defalcation while acting in a fiduciary capacity", "or willful or malicious injury".  The State Court made no findings that correlate to, and are decisive as to, the existence of a fiduciary relationship between the Debtor and the Plaintiffs, as required by § 523(a)(4); nor did the State court make any finding which establishes that the Debtor acted with a deliberate intent to cause injury to the Plaintiffs, as required by § 523(a)(6).  These facts need not be present in order to find grounds to pierce the corporate veil.

Therefore, since collateral estoppel does not apply, in order to determine whether the State Court Judgment is non-dischargeable, it is necessary to consider whether, based upon the

evidence presented at trial, the record supports a finding of non-dischargeability under

§§ 523(a)(4) or 523(a)(6).

    B.  <u>Non-dischargeability under § 523(a)(4)</u>

    Section 523(a)(4) excepts from discharge any "debt for fraud or defalcation while acting

in a fiduciary capacity, embezzlement, or larceny".  11 U.S.C. § 523(a)(4).  The term

"fiduciary," for the purposes of § 523(a)(4), is a matter of federal law.  <u>Wissel</u>, 494 B.R. at 38.

<u>See</u> <u>Grow Up Japan, Inc. v. Yoshida (In re Yoshida)</u>, 435 B.R. 102, 109 (Bankr. E.D.N.Y. 2010);

<u>E. Armata, Inc. v. Parra (In re Parra)</u>, 412 B.R. 99, 104 (Bankr. E.D.N.Y. 2009); <u>Chao v. Duncan</u>

<u>(In re Duncan)</u>, 331 B.R. 70, 80 (Bankr. E.D.N.Y. 2005).  A fiduciary relationship under

§ 523(a)(4) "generally involve[s] express trusts, technical trusts or statutorily imposed trusts."

<u>Yoshida</u>, 435 B.R. at 108.  State law is relevant to the extent that it prescribes the elements of a

trust or regulates fiduciary obligations, <u>see</u> <u>The Andy Warhol Foundation for Visual Arts, Inc. v.</u>

<u>Edward W. Hayes (In re Hayes)</u>, 183 F.3d 162, 167 (2d Cir. 1999)), or it creates a fiduciary

relationship under common law or by statute, <u>see</u> <u>Zohlman</u>, 226 B.R. at 773.  Moreover, "the

fiduciary relationship must exist prior to the act creating the debt; a trust relationship cannot be

said to arise merely from the wrongful conduct itself."  <u>Id.</u>  Thus, a fiduciary relationship under

§ 523(a)(4) does not arise based upon an equitable remedy such as a constructive trust.  <u>See</u>

<u>Yoshida</u>, 435 B.R. at 108-109.  However, fiduciary relationships for the purposes of § 523(a)(4)

are not limited to those arising under express, technical or statutory trusts.  The requisite

fiduciary capacity has been found, for example, based on an attorney-client relationship (<u>Hayes</u>,

183 F.3d 162); the duty owed by a corporate officer or director to shareholders (<u>In re Nofer</u>, 514

B.R. 346, 354 (Bankr. E.D.N.Y. 2014)); and the duty owed by a managing member and chief

executive officer of a limited liability company to other members (<u>Sanchez</u>, 2016 Bankr. LEXIS 3481).

 The Plaintiffs contend that because the Debtor owed a fiduciary duty to Keystone, as its officer and director, the requisite fiduciary relationship has been established under § 523(a)(4). This argument reflects a misunderstanding of the fiduciary capacity element of § 523(a)(4); the fiduciary duty in question must be owed to the plaintiff, not to another party.  <u>See</u> <u>Zohlman</u>, 226 B.R. at 772 (finding that the "debtor stood in fiduciary relationship to the creditor for purposes of § 523(a)(4)"); <u>Sanchez</u>, 2016 Bankr. LEXIS 3481 at *12-13 (finding a fiduciary relationship between the plaintiff-creditor and the defendant-debtor, and noting that the mere existence of a fiduciary relationship is not sufficient to deny dischargeability; the debtor must have acted in a fiduciary capacity with respect to the particular conduct giving rise to the liability which is claimed to be non-dischargeable).

 Applied to this proceeding, this means that in order to find that the Debtor's obligation to the Plaintiffs is non-dischargeable under § 523(a)(4), this Court must find that the Debtor acted in a fiduciary capacity with respect to the Plaintiffs when engaging in the conduct which gave rise to the State Court Judgment.  It is therefore necessary to determine whether the evidence presented establishes that the Debtor owed a fiduciary duty to the Plaintiffs, and if so, when that duty arose.

 "Under New York Law, directors of an insolvent corporation owe a fiduciary duty to preserve the assets of the corporation for the benefit of the creditors."  <u>Econ. Dev. Growth Enters. Corp. v. McDermott</u>, 478 B.R. 123, 128 (Bankr. N.D.N.Y. 2012) (quoting <u>Hughes v. BCI Int'l Holdings</u>, 452 F. Supp. 2d 290, 308 (S.D.N.Y. 2006)).  The fiduciary duty "exists only to ensure that the directors do not funnel the assets of the corporation to themselves or to other

shareholders, subverting the creditor's rights in bankruptcy." Econ. Dev. Growth, 478 B.R. at

128 (quoting Geren v. Quantum Chem. Corp., 99 F.3d 401 (2d Cir. 1995). This theory of

fiduciary duty, called the "trust fund doctrine", imposes trust obligations on the officers and

directors and provides a basis for imposing liability to creditors "for wrongful dissipation of

assets of an insolvent corporation". Credit Agricole Indosuez v. Rossiyskiy Kredit Bank, 94

N.Y.2d 541, 550 (2000). Because this duty arises at the time of insolvency and prior to

wrongdoing, it meets the requirements of fiduciary capacity under § 523(a)(4). Master-Halco,

Inc. v. Picard (In re Picard), 339 B.R. 542, 554 (Bankr. D. Conn. 2006) (holding that the

fiduciary duty under trust fund doctrine arises when the corporation enters insolvency, not when

the officer performs the wrongful act).

      In order to decide whether the trust fund doctrine applies in this case, it is necessary to

determine whether the evidentiary record establishes that Keystone was insolvent during the time

period at issue. Cases applying New York law do not define insolvency for the purpose of the

trust fund doctrine. The Bankruptcy Code defines "insolvent" as a "financial condition such that

the sum of such entity's debts is greater than all of such entity's property, at a fair valuation," not

including exempt or fraudulently transferred assets. 11 U.S.C. § 101(32)(A). Section 102(8) of

the New York Business Corporation Law defines "insolvent" as "being unable to pay debts as

they become due." N.Y. Bus. Corp. Law § 102(8). Neither party offered evidence on whether,

or at what point, Keystone was insolvent under either definition. However, Keystone's 2008 and

2009 tax returns, which were received as evidence to show that loans were made by Keystone to

the Debtor, provide some insight on this issue.

Keystone's balance sheet, attached as Schedule B to its 2008 New Jersey Corporation Business Tax Return (Pls.' Ex. Keystone's 2008 N.J. Corp. Bus. Tax Return)[4] shows, at year-end, assets consisting of $24,827 in tangible personalty, "loans to stockholders/affiliates" of $220,729, liabilities of $13,662, including "loans from stockholders/affiliates" of $6,831, and retained earnings of $231,894. If it is assumed that "loans to stockholders/affiliates" has little value, and the value of this asset is deducted, Keystone is left with equity of $11,165 at year-end 2008.

Keystone's 2009 tax return shows a similar asset and liability profile. Keystone's balance sheet attached as Schedule L to its 2009 Federal income tax return (Pls.' Ex. 4) shows the total value of its assets at year end as $299,307, of which $274,480 consisted of loans to shareholders. The only liability shown is a long term obligation of $5,132. If the value of "loans to shareholders" is deducted, Keystone's equity as of year-end 2009 was approximately $20,000.

However, Keystone's 2009 tax return does not reflect the liability to Proactive, which, it appears existed, at least in part, as of year-end 2009. The parties stipulated that for a five-year period, Keystone was "fairly current" in its obligations to Proactive; that "starting in or about November 2009" Keystone loan repayment checks to Proactive were dishonored; that Keystone received additional loans from Proactive "during this period before return of the checks"; and that Keystone thereafter liquidated its vehicle fleet but did not "repay Proactive on the sale of any vehicles purchased by use of Proactive monies since on or before November 1, 2009." (Pls. JPTO ¶¶ 5p, 5q, ECF No. 22; Def. JPTO ¶¶ 5q, 5r, ECF No. 23.) It is not clear from the record when the vehicles purchased with Proactive loans were sold (thus giving rise to the obligation to repay Proactive). Nor is it clear which Keystone's checks were ultimately dishonored; Pappas

---

[4] This exhibit was not introduced at trial, but was included in the evidentiary record stipulated to by the parties.

testified that some of Keystone's bounced checks were paid (Tr. at 19) and the evidentiary record includes a copy of a dishonored check for $25,000 dated December 1, 2009, but no proof of additional dishonored checks was found in the record.

However, it does appear that the earliest point at which Keystone's liabilities exceeded its assets, or became unable to pay its debts as they became due, was November 1, 2009, when Keystone's loan repayment checks began to bounce.  Until that time, Keystone was, the parties agree, "fairly current" in its obligations to Proactive; the record does not provide any basis to conclude that Keystone's liabilities exceeded its assets, or that Keystone lacked the ability to pay its debts as they became due, prior to November, 2009.  Under either definition of insolvency, therefore, on this record, November 1, 2009 is the earliest date upon which Keystone could be found to have been insolvent.  Thus, under the trust fund doctrine, November 1, 2009 is the earliest date when the Debtor became a fiduciary of Keystone's creditors.[5]

It is necessary to turn to the second and third elements of § 523(a)(4) and to ask whether the record shows that the Debtor engaged in fraud or defalcation while Keystone was insolvent, and if so, whether these acts gave rise to the debt which is claimed to be non-dischargeable, i.e., the State Court Judgment.  Defalcation is not defined under the Bankruptcy Code; however, courts have employed definitions such as "the failure to meet an obligation", and "a monetary deficiency through breach of trust by one who has the management or charge of funds."  Hyman, 502 F.3d at 66 n.1.

---

[5] The findings in the State Court Decision do not provide a basis for imposing a fiduciary duty on the Debtor under the trust fund doctrine at an earlier point.  Although the state court found "indicia of domination such as inadequate capitalization," this is not equivalent to a finding of insolvency.  Inadequate capitalization or unreasonably small capital "denotes a financial condition short of equitable insolvency", MFS/Sun Life Tr.-High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 944 (S.D.N.Y. 1995) (quoting Moody v. Sec. Pac. Bus. Credit, Inc., 971 F.2d 1056, 1064 (3d Cir. 1992) and "refers to the inability to generate sufficient profits to sustain operations." Moody, 971 F.2d at 1070.  In addition, the State Court made no finding as to when this condition arose.

Defalcation under § 523(a)(4), like fraud, includes a requisite mental state.  The Supreme

Court has held that defalcation requires "objective recklessness…of such a nature and degree

that, considering the nature and purpose of the actor's conduct and the circumstances known to

him, its disregard involves such a gross deviation from the standard of conduct that a law-abiding

person would observe in the actor's situation."  Bullock v. BankChampaign, N.A., 569 U.S. 267,

273-74 (2013) (quoting ALI, Model Penal Code §§ 2.02(s)(c), p. 226 (1985)).  In the context of

the trust fund doctrine, where the requisite state of mind is shown, defalcation could include the

misappropriation of funds which should have been preserved for the benefit of creditors.  This

means that, in order to establish that the State Court Judgment is non-dischargeable under

§523(a)(4), the Plaintiffs must show that the Debtor incurred this debt as a result of defalcation

committed during the period of insolvency (in or after November, 2009).  This the Plaintiffs have

failed to do.

The evidence does not show that this was a debt *for* or *arising out of* defalcation.  There

is nothing on the record to show that during the period of insolvency (from November 2009) the

Debtor misappropriated funds to the extent of the sum of the Judgment.  The Plaintiffs allege that

the Debtor used Keystone funds to pay for personal expenses and to make mortgage payments,

and the record includes checks, signed by the Debtor's husband, payable to the Debtor or her

husband totaling approximately $9,000 during the month of November.  (Pls.' Ex. 8.)  However,

this amount falls far short of the debt owed under the State Court Judgment.  Moreover, the

Debtor testified that the checks to her from Keystone were salary.  (Tr. at 70-71.)  The Debtor

admitted that Keystone funds were used to pay her home mortgage and other personal bills (Tr.

at 34-35); however, the only evidence of any mortgage payment made after November 1, 2009

was a payment of $2,693.51, which was charged to the Keystone account three times in December, 2009 and returned twice.  (Pls.' Ex. Keystone Dec. 2009 TD Bank Statement.)[6]

The Plaintiffs stressed the fact that they were not paid even though Keystone's entire fleet of cars was liquidated.  (Pls.' Am. Compl. ¶ 33, ECF No. 17; Pls. JPTO ¶ 5q, ECF No. 22.) There is no evidence on the record, through bank statements or otherwise, reflecting the actual amount generated from this liquidation, or indicating how these proceeds were disbursed, from which the court could make a finding that the Debtor misappropriated these funds to the detriment of Keystone's creditors during the period of insolvency.

Furthermore, and more fundamentally, it is not possible to conclude that the obligation owed by the Debtor to the Plaintiffs by reason of the State Court Judgment is a debt "for fraud or defalcation while acting in a fiduciary capacity".  The State Court Judgment is not measured by any amounts that were found by the State Court to have been misappropriated by the Debtor from Keystone.  Rather, the State Court Judgment is for the amounts owed by Keystone to the Plaintiffs, for which the State Court found the Debtor liable by virtue of her domination and control of Proactive.  The Debtor's obligation to the Plaintiffs arises out of the State Court's determination that the elements necessary to pierce the corporate veil had been shown, not out of any defalcation committed by the Debtors as a fiduciary to the Plaintiffs.

C.  Non-dischargeability under 11 U.S.C. § 523(a)(6)

The Plaintiffs also seek a declaration that the Debtor's debts are non-dischargeable under § 523(a)(6).  (Pl.'s Am. Compl. ¶ 37-41, ECF No. 17.)  Section 523(a)(6) provides that debts incurred "for willful and malicious injury by the debtor to another entity or the property of another entity" are not dischargeable in bankruptcy.  11 U.S.C. § 523(a)(6).  As discussed above,

---

[6] This exhibit was not introduced at trial, but was included in the evidentiary record stipulated to by the parties.

in order to establish that a debt is non-dischargeable under § 523(a)(6), a plaintiff must establish three elements: first, that the debtor acted willfully; second, that the debtor acted maliciously; and third, that the debtor's willful and malicious actions caused injury to the plaintiff.  Birnbaum, 513 B.R. at 803-804.

The term "willful" "denotes 'a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury,'" Econ. Dev. Growth, 478 B.R. at 131 (quoting Ne. Remarketing Servs., Inc. v. Guthier (In re Guthier), No. 08-33020, 2010 WL 1443989, *4 (Bankr. N.D.N.Y. Apr. 9, 2010)), meaning that the debtor must have "intend[ed] the consequences of an act, not simply the act itself."  Kawaauhau v. Geiger, 523 U.S. 57, 61–62, (1998); Vaughn v. Williams (In re Williams), 2015 Bankr. LEXIS 2329, *17 (Bankr. S.D.N.Y. 2015).  Therefore, "only debts stemming from intentional torts, and not reckless or negligent torts, satisfy the willfulness element of § 523(a)(6)."  In re West, 339 B.R. 557, 565 (Bankr. E.D.N.Y. 2006) (citing Geiger, 523 U.S. at 61).  The term "malicious" means conduct that is "'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will'", Econ. Dev. Growth, 478 B.R. at 131, and may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances."  Long v. Green (In re Green), 2007 Bankr. LEXIS 1691, *19 (Bankr. S.D.N.Y 2007) (quoting In re Stelluti, 94 F.3d 84, 87 (2d Cir. 1996)).

The Plaintiffs allege that "the delivery of [dishonored] checks to Proactive, plus the unauthorized $50,000 withdrawal from Proactive constitutes 'willful and malicious injuries' to Proactive or the property of Proactive."  (Pl.'s Am. Compl. ¶ 40, ECF No. 17.)  The Plaintiffs also contend that, although Thomas, not the Debtor, misappropriated funds from Proactive's account, her failure to recover those misappropriated funds, compounded with her failure to

repay the loan amount reflected on the 2009 tax return, her Keystone salary for "failed bookkeeping services", and the money used to pay her home mortgage and personal expenses, constitute a "willful and malicious injury" to Proactive's personal property, in that it caused "severe detriment" to the Plaintiffs.  (Pls.' Post Trial Mem., at 25.)  This argument must be rejected.  There was no showing that the Debtor was responsible for the improper withdrawal of money from Proactive's account, or that she received these funds.  It is axiomatic that "a person's willful and malicious actions cannot be imputed to another person or entity for the purpose of holding that debt non-dischargeable under Code section 523(a)(6)".  See Contini v. Cook (In re Cook), 2009 Bankr. LEXIS 2646 (Bankr. N.D.N.Y. Apr. 7, 2009) (citing Davis v. Tomasek (In Re Tomasek), 175 Fed. App'x. 662, 668 n.4 (5th Cir. 2006) (citing In re Bucak, 278 B.R. 488, 496 n.7 (Bankr. W.D. Tenn. 2002))).  By the same token, failure to repay or recover misappropriated funds, where the debtor was neither responsible for the misappropriation, nor the recipient of the funds, cannot constitute grounds for non-dischargeability under § 523(a)(6).

Nor does the Debtor's failure to repay the Keystone funds she received as loans and that she used for personal expenses amount to willful and malicious injury to the Plaintiffs. There is no evidence on the record that the Debtor failed to repay the loans with deliberate intent to injure the Plaintiffs.  Nor does the State Court's finding that the Debtor was responsible for the "wrong of the corporation's failure to pay" the Plaintiffs, even if given collateral estoppel effect, transform her failure to pay the State Court Judgment into a "willful and malicious injury", for the same reason: there is no evidence on the record showing that she failed to pay the Plaintiffs with the deliberate intention to cause them injury.  The court is also unable to make a finding on this record that the delivery to the Plaintiffs of checks which were ultimately dishonored was a willful and malicious injury intended by the Debtor.

The Plaintiffs also contend that the Debtor's repayment, after November, 2009, of loans she had guaranteed, constituted a willful and malicious injury to the Plaintiffs, who were not paid. The Debtor admitted that after Keystone's default, she attempted to repay debts that were "in [her] name" (Tr. at 44-45), with money from her savings and from her grandmother (Tr. at 42). Absent evidence of intent to injure, and of malice, the failure to repay, even if combined with payment to other creditors, does not constitute a "willful and malicious act" under § 523(a)(6). See Long, 2007 Bankr. LEXIS 1691, at *20 (where debtor used equity from mortgage refinance to repay other creditors after default on note granted to plaintiffs, "the mere fact that [the debtor] chose to pay other creditors, but not the [p]laintiffs is in no way indicative of a willful and malicious intent to injure"); accord In re Al-Naji, 521 B.R. 65, 70 (Bankr. W.D.N.Y. 2014) ("When resources are insufficient to allow payment of all creditors, the non-payment of any particular creditor will serve as evidence not of malice, but of the reality that someone will be left unpaid").

## CONCLUSION

For the reasons set forth above, the Plaintiffs' request for a determination that the State Court Judgment is non-dischargeable under §§ 523(a)(4) and 523(a)(6) is denied. A separate order will be issued.

Dated: Brooklyn, New York
      November 20, 2017

_____
**Carla E. Craig**
**United States Bankruptcy Judge**